## SUPREME COURT OF JUDICATURE

#### OF THE

## STATE OF VERMONT.

### ADDISON COUNTY, JANUARY TERM,
### A. D. 1803.

*JONATHAN ROBINSON,* Chief Judge.
*ROYALL TYLER,* } *Assistant Judges,*
*STEPHEN JACOB,* }

John and Gilbert Aspinwall, Appellants,

*against*

Thomas Tousey, Appellee.

In all cases where there is a submission of matters in controversy to arbitrators by bond, whether the submission be made irrevocable or not, either party may revoke such submission before the award be made and published, and by such revocation he annuls all contracts as relative to the submission conditioned in the bond, and leaves the party injured by the revocation to rest entirely upon the penalty of the bond of submission.

ENDORSEES of a promissory note against the promisor.

The plaintiffs declared on a promissory note made by the defendant to one *Edward Ryan,* and by him endorsed to them.

The defendant pleaded *non assumpsit* to the declaration, and filed the following plea in set-off.

And for further plea in this behalf, by leave of Court had, &c. the said *Thomas* says, that long before notice of the sale and endorsement of said promissory note, to wit, on the 28th day of *November*, 1785, at *Vergennes* aforesaid, the said *Edward Ryan* was justly indebted to the said *Thomas* in divers large sums of money, for that whereas the said *Ryan* had before that time, to wit, on the 10th day of *April*, 1795, at *Vergennes* aforesaid, by his certain indenture in writing of that date, signed with his hand and sealed with his seal, in consideration of divers large sums of money then and there received of the said *Thomas*, granted, bargained, sold, assigned, transferred and set over to the said *Thomas* his the said *Ryan's* patent right for manufacturing pot and pearl ashes in the State of *Vermont*, and part of the State of *New-York*, and had in and by said indenture, among other things, covenanted to and with the said *Thomas*, that if he the said *Thomas* should be unable to manufacture (according to the method of manufacturing as set forth in the schedule annexed to said *Ryan's* letters patent, as before in said indenture recited) pot-ash, in a furnace constructed as set forth in the schedule in said indenture recited, at the rate of two tons *first sort* pot-ash, in twenty-four hours from good salts of lie, then and in that case every thing in said indenture, obligatory on the part of the said *Thomas*, should be and remain void, and the said *Ryan* should refund all moneys by him received of the said *Thomas*, as by his said indenture, &c. And whereas the said *Thomas*, so having the right of manufacturing pot-ash as aforesaid, did, afterwards, to

wit, in the spring of the year 1795, manufacture about six tons of pot-ash, according to the said *Ryan's* patent method, and transported the same to the city and port of *New-York*, being a proper market, &c. which pot-ash, by due inspection made, &c. passed as *second sort* of pot-ash, and occasioned a difference or loss of eight pounds *New-York* currency on each ton, equal in the whole to the sum of 120 dollars, current money of this and the *United States*, he the said *Ryan* in consideration thereof, afterwards, to wit, on the same 28th day of *November*, 1795, aforesaid, to wit, at *Vergennes* aforesaid, did engage and promise the said *Thomas*, that the same should be accounted and endorsed on the said *Ryan's* sale of the aforesaid patent right to the said *Thomas*, contained in the indenture aforesaid, and should be deducted from any payments which the said *Thomas* might thereafter have to make to said *Ryan* on account of the said purchased patent right, with six per cent. interest, until said payment should become due; and the said *Thomas* avers, that the aforesaid sum of 120 dollars, with six per cent. interest thereon, accruing and accrued, hath not been accounted or endorsed on said indenture. By reason whereof, &c. The declaration then raises a liability in *Ryan*, and a promise, with subsequent refusal to pay this sum.

The declaration in set-off, contained two other counts of general *indebitatus assumpsit* against *Ryan*, and alleged to be before notice of endorsement, one for money had and received, and the other for money laid out and expended; to the damage of said *Thomas* 300 dollars, which he prays may be offset against the demands of the said *Gilbert* and *John*,

contained in the promissory note aforesaid, agreeably to the statute in such case made and provided.*

Aspinwall<br>v.<br>Tousey.

---

\* From the organization of the government to the year 1795, the question whether an action could be maintained upon a promissory note in the name of the endorsee, had been much agitated, and in the County Courts opposing decisions had been made. As the State had been peopled principally with emigrants from the other States, every one brought with him local sentiments on the subject, which, as the practice had been different in the parent States, induced a difference of opinion. The legislative will had not been declared by any express statute; but I find during this period, several acts which might seem to countenance the negotiability of promissory notes, more especially the act against counterfeiting and passing bills of public credit, coins, and notes, and to prevent injustice in passing the same, passed *March* 2, 1787, and since repealed, the 7th section of which enacts, " that if any person, society, number of persons, or company within this State, without special authority from the Legislature, shall presume to strike, emit, or put out any bills of credit, or notes, on any fund or credit of any person or persons, society or company, to be used and improved as a general currency or medium of trade, as or in lieu of money, (*other than promissory negotiable notes,*) such person or persons, on conviction," &c. In the year 1795, the Supreme Court of Judicature, at their term in *Windham* County, after solemn argument, decided, that promissory notes made to payee or order, were negotiable, and sustained an action in favour of an endorsee. At their *October* sessions the same year, the General Assembly passed the following act: " An act with respect to the negotiability of notes. Whereas disputes have arisen, whether notes drawn to the payee or order are recoverable in the name of the endorsee ? to put an end to which disputes, it is hereby enacted, &c. that from and after the passing of this act, no person shall be holden to answer in an action or suit hereafter to be brought in the name of any person other than the person whose name is in

*Hough & Spooner's* edit. *Vermont* Stat. p. 40.

Aspinwall
v.
Tousey.

   To this declaration in set-off, the plaintiffs pleaded in bar; because they say, that long after the making -

the note or obligation expressed as creditor. Provided always, that this act shall not be construed to prevent any executor or administrator from maintaining a suit upon any obligation given to any person whose estate they administer upon." In the year 1798, the General Assembly passed the act now in force, under which the offset was pleaded, as before notice, as mentioned in the plea in bar. "An act allowing endorsees to maintain actions in their own names. It is hereby enacted, &c. that the endorsee or endorsees of any bill or promissory note for the payment of money to any person or persons, his or their order, or to the bearer, may maintain an action thereon in his, her or their own name or names for the recovery of the money. Provided always, that in all such actions it shall be lawful for the defendant or defendants to plead an offset of all demands proper to be pleaded in offset, which the defendant or defendants may have against the original payee or payees before notice of such endorsement against the endorsee or endorsees; and may also plead or give in evidence on trial of any such action, any matter or thing which would equitably discharge the defendant or defendants in an action brought in the name of the original payee or payees. Section 2. Provided also, and it is hereby further enacted, that in all such cases the endorsee or endorsees shall recover no more costs than the original payee or payees would be entitled to recover, had the suit been brought in his, her, or their own name." Section 3. repeals the act of 1795.

   It appears, that the dispute respecting the negotiability of promissory notes had arisen in *England*, and had been settled in the same way by act of parliament.

   " *Sic canibus catulos similes, sic matribus hædos*
   " *Noram: sic parvis componere magna solebam.*" Virg.

   It seems that neither inland bills of exchange or promissory notes were frequent in *England* before the reign of *Charles* II. and for a time after their introduction neither

the promise and undertakings in the said plea of off-   <span>Aspinwall<br>v.<br>Tousey.</span>
set mentioned, and above supposed to have been

---

were considered *negotiable*. In this respect, however, inland bills of exchange obtained the preference, but promissory notes, although made payable to the promise, *or order*, were not considered by the Court of King's Bench to be negotiable by the custom of merchants, even so late as the year 1702; for that Court decided against the negotiability of a promissory note in the case of *Clerk* v. *Martin*, as reported by Lord *Raymond*, vol. 2. p. 757. where Lord Chief Justice *Holt* took such a decided part against the plaintiff as seems hardly reconcilable with that equanimity so generally and so admirably displayed on the *English* supreme bench. The plaintiff brought an action upon his case against the defendant upon several promises. One count was upon a general *indebitatus assumpsit* for money lent to the defendant. Another count was upon the custom of merchants, as upon a bill of exchange, and showed that the defendant gave a note subscribed by himself, by which he promised to pay —— to the plaintiff *or his order*. Upon *non assumpsit* a verdict was given for the plaintiff; and it was moved in arrest of judgment, that this note was not a bill of exchange within the custom of merchants, and therefore the plaintiff, having declared upon it as such, was wrong; but that the proper way in such cases is to declare upon a general *indebitatus assumpsit* for money lent, and the note would be good evidence of it. But it was argued for the plaintiff, that this note being payable to the plaintiff or his order, was a bill of exchange, inasmuch as by its nature it was negotiable; and that distinguishes it from a note payable to *I. S.* or bearer, which he admitted was not a bill of exchange, because it is not assignable nor endorsable by the intent of the subscriber, and consequently not negotiable; and therefore it cannot be a bill of exchange, because it is incident to the nature of a bill of exchange to be negotiable. But here this bill is negotiable; for if it had been endorsed payable to *J. N.*, *J. N.* might have brought his action upon it as upon a bill of exchange, and might have declared upon the custom of mer-

Aspinwall
v.
Tousey.

made, to wit, on the 26th day of *September*, A. D.
1797, the said *Thomas* made, executed, and deli-

chants. Why, then, should it not be, before such endorsement, a bill of exchange to the plaintiff himself, since the defendant, by his subscription, has shown his intent to be liable to the payment of this money to the plaintiff or his order; and since he hath thereby agreed that it shall be assignable over, which is by consequence that it shall be a bill of exchange. That there is no difference in reason between a note which saith, " I promise to pay to *J. S.* or order," &c. and a note which saith, " I pray you to pay to *J. S.* or order," &c. they are both equally negotiable, and to make such a note a bill of exchange can be no wrong to the defendant, because he, by signing the note, has made himself to that purpose a merchant. 2 *Vent.* 292. *Sarsfield* v. *Witherly*, and has given his consent that his note shall be negotiated, and thereby has subjected himself to the law of merchants.

See also *Comb.* 45.

*Holt*, Chief Justice, was *totis viribus* against the action, and said that this note could not be a bill of exchange. That the maintaining of these actions on such notes was innovating upon the rules of the common law, and that it amounted to the setting a new sort of specialty unknown to the common law, and invented in *Lombard-street*, which attempted, in these matters of bills of exchange, to give laws to *Westminster-Hall*. That the continuing to declare upon these notes upon the custom of merchants, proceeded from obstinacy and opinionativeness, since he always expressed his opinion against them, and since there was so easy a method as to declare upon a general *indebitatus assumpsit* for money lent, &c. As to the case of *Sarsfield* v. *Witherly*, he said he was not satisfied with the judgment of the King's Bench, and that he advised the bringing a writ of error, and judgment was given *quod quærens nil capiat per billam*, &c. by the opinion of the whole court.

At the next session of parliament, the statute of the 3d and 4th of *Anne* recites, " that whereas it hath been held, that notes in writing, signed by the party who makes the same, whereby such party promises to pay unto any other person,

2

vered to the said *Edward Ryan* his certain bond or
writing obligatory, sealed with the seal of the said
*Thomas*, and signed with his own proper hand, and
ready in Court to be produced, which said bond is
in the words, figures, and letters following, to wit:

Know all men by these presents, that I, *Thomas
Tousey*, of, &c. am holden and stand firmly bound
unto *Edward Ryan*, of, &c. in the penal sum of
forty thousand dollars, current money of the *United
States*, for the payment of which sum well and truly
to be made to the said *Edward*, after the expiration
of four years from the date hereof, with interest, I
bind myself and my heirs firmly by these presents,
sealed with my seal, and dated in the City of *Ver-
gennes* this 26th day of *September*, 1797.

---

or his order, any sum of money therein mentioned, are not
assignable or endorsable over within the custom of merchants
to any other person, and that such person, to whom the sum
of money mentioned in such note is payable, cannot maintain
an action by the custom of merchants against the person who
first made and signed the same, and that any person to whom
such note shall be assigned, endorsed or made payable, could
not, within the said custom of merchants, maintain any action
upon such note against the person who first drew and sign-
ed the same; therefore, to the intent to encourage trade and
commerce, which will be much advanced if such notes shall
have the same effect as inland bills of exchange, and shall be
negotiated in like manner, it is enacted, in substance, that
promissory notes, payable to order or bearer, may be assign-
ed and endorsed, and action maintained thereon as on inland
bills of exchange." And this act was made perpetual by the
act of the 7th year of the same reign. So that the question
as to the negotiability of promissory notes may be considered
to be put at rest in both countries.....*Reporter.*

Aspinwall
v.
Tousey.

The condition of the above obligation is such, that if the above bounden *Thomas Tousey*, his heirs, executors, or administrators, and every of them, for and on his and their parts and behalf, do and shall well stand to, abide, perform, observe, fulfil and keep the award, order, arbitrament, final end and determination of *Thomas Byrd, Samuel Hitchcock,* and *Enoch Woodbridge,* Esqrs. of the City of *Vergennes* aforesaid, arbitrators, indifferently named, elected, and chosen, as well on the part and behalf of the above bounden *Thomas Tousey,* as of the above named *Edward Ryan,* to arbitrate, award, order, adjudge, and determine of and concerning all and all manner of action and actions, cause and causes of actions, suits, contracts, bills, bonds, specialties, judgments, executions, extents, accounts, debts, dues, sum and sums of money, quarrels, controversies, trespasses, damages, and demands whatever, both in law or equity, or otherwise, which at any time or times heretofore have been had, made, moved, brought, commenced, sued, prosecuted, committed, omitted, done, or suffered, by or between the said parties, or either of them, so as the said award, arbitrament, judgment, final end and determination between the said parties, be made in writing under the hands and seals of the said arbitrators, and ready to be delivered to the said parties on or before the first day of *January*, A. D. 1799. And it is further agreed by and between the parties, that the said arbitrators shall take under their consideration, and their award thereon make between the parties, a certain demand or bond which the said *Ryan* hath against *Justus Bellamy*, of the City of *Vergennes* aforesaid, which demand or obligation is signed by the said *Justus* and

*Thomas*, dated the 10th day of *April*, 1795, which said obligation was executed to the said *Ryan* by the said *Bellamy* and *Tousey*, for the exclusive right of manufacturing pot-ash in the State of *Vermont* and part of the State of *New-York*, according to his the said *Ryan's* patent method, as if the said demand or obligation was between the said *Tousey* and the said *Ryan* solely ; and the said *Justus Bellamy* is hereby discharged from the said obligation.  Now then it is the true intent and meaning of the parties, that if the said *Tousey* stand to, abide by, and perform the award of the said arbitrators in all its parts, the foregoing obligation to be void, otherwise to remain in full force and virtue.   And it is hereby further agreed by and between the parties to the above obligation, that if the said *Thomas Tousey* absents himself, or neglects to attend before the said arbitrators before the first day of *February*, A. D. 1799, (death, sickness, or other unforeseen accidents excepted,) so that the above matters of arbitration are not brought to a final end and determination on or before that day, then, in addition to the subjecting himself to the above penalty, the said *Tousey* hereby relinquishes all claims and demands, or ground of action against the said *Edward Ryan*, as though determined by the said *Thomas Byrd, Samuel Hitchcock*, and *Enoch Woodbridge*, Esquires, the above-mentioned arbitrators, or others appointed by said parties in case of the non-attendance of the said arbitrators, which said arbitrators are to meet in the City of *Vergennes* aforesaid, to arbitrate, decide, and award upon the above differences between the parties.  In witness, &c.  And for that the said *Edward Ryan*, on the same day and year of the date of said bond or writing obligatory,

Aspinwall
v.
Tousey.

executed and delivered to the said *Thomas* his bond or writing obligatory, thereby submitting the matters in controversy mentioned in the first above recited bond, to the arbitrament, final end, and determination of the said *Thomas Byrd, Samuel Hitchcock,* and *Enoch Woodbridge,* Esquires, to be determined by said arbitrators in manner and form as mentioned in the aforesaid bond. And it was then and there agreed by said *Thomas,* as appears by said first recited bond or writing obligatory, that if the said *Thomas* should absent himself, or neglect to attend before said arbitrators, before the first day of *February,* A. D. 1799, (death, sickness, and other unforeseen accidents excepted,) so that the aforesaid matters of arbitration cannot be brought to a final end and determination, on or before the said first day of *February,* 1799, then, in addition to subjecting himself to the aforesaid penalty, the said *Thomas* did relinquish all claims and demands against the said *Edward Ryan.* And the said *Edward* in fact says, that the said *Thomas* did absent himself, and neglect to attend before said arbitrators, without the intervention of death, sickness, or unforeseen accident, and did in fact revoke said arbitrament before the said first day of *February,* A. D. 1799, so that said arbitrators could not have ever made their award upon said matters of difference; all which the said *Edward Ryan* is here ready to verify and prove in manner and form as the Court here shall direct. Wherefore he prays judgment, &c.

To this plea in bar the defendant *Tousey* demurred.

The question made was, whether the conditional release or relinquishment by *Tousey* of all claims or

demands or ground of action against *Ryan*, men-    Aspinwall
tioned in the submission, could operate upon the      v.
breach of it, after the revocation of the submission   Tousey.
by *Tousey*.

It was contended by the counsel for the defendant,
demurrant, that it could not. That *majus continet
in se minus*. That all provisionary articles in the sub-
mission were but parts of the contract of submission.
That by the defendant's revocation he annulled the
whole submission. That if the plaintiff has been in-
jured by the revocation he may recover for the injury
upon the bond.

That the condition the breach of which is charged
upon the defendant in the plea in bar, is so vague,
that if the Court should even consider that the revo-
cation did not annul it, that it could never be deter-
mined whether he had broken it or not. The words
are, " That if the said *Tousey* absents himself, &c.
so that, &c. the said *Tousey* relinquishes all claims
and demands and ground of action against the said
*Edward Ryan*, as though *determined* by said *Thomas
Byrd*," &c. *How determined?*

Further, the condition contemplates a meeting of
the arbitrators, and the wilful absence of *Tousey*
after such meeting. " So that the above matters of
arbitration are not brought to a final end and deter-
mination on or before the first day of *February*,
1799." But the condition, even by a fair construction
of the submission, was not to be in force, and con-
sequently could not be broken unless the arbitrators
met ; and it seems there existed a doubt whether the
gentlemen named as arbitrators would meet, and pro-
vision is made, in case of their declining, for the ap-

pointment of others by the parties; and it does not appear by the plea in bar, whether these gentlemen accepted their appointment, or met, or whether others were appointed in their stead; for if they declined the trust, or accepted it and did not convene, or declined and no others were appointed, the non-attendance of *Tousey* was no breach of the condition.

By the plaintiff's counsel, the right to revoke the submission was conceded, and that *generally;* in such ease the party must seek his remedy on the bond. But it was insisted, that here was a contract independent of the submission, and in its nature not to be annulled by the revocation of the submission. That the whole bond of submission had concluded in the usual form. "That if the said *Tousey* should stand to, abide by, and perform the award of the arbitrators in all its parts, then the foregoing obligation to be void, otherwise to remain in full force and virtue." That then the parties inserted on the same paper a new and independent contract, accompanied with a condition, the breach of which had nothing to do with the penalty of the bond, but for which an extrinsic penalty was provided. The condition was, that *Tousey* should not absent himself, or neglect to attend before the arbitrators, (death, sickness, or other unforeseen accidents, excepted,) so that the above matters of arbitration could not be brought to a final end and determination before the first day of *February*, 1799. The penalty appropriated expressly to the breach of this condition was, "that *Tousey* should relinquish all claims and demands and grounds of action against the said *Edward Ryan*, as though determined by the said *Thomas Byrd*," &c. To say

that this is vague, is trifling. The claims, demands, <span style="float:right">Aspinwall</span>
and grounds of action are to be relinquished by *Tou-* <span style="float:right">v.<br>Tousey.</span>
*sey* in the same manner as if *determined* by the arbi-
trators.  Can this be understood in any other manner
than as if determined *against him?*  for there could .
be no breach if determined in his favour.

To insist that the revocation of the submission can
annul this contract, would be to insist on the an-
nulling of a contract, contrary to the original intent
of the contracting parties.  The object of Courts of
Justice is to carry the intention of parties into effect.
The intent of the parties to this contract must have
been, that it should survive and be binding after the
revocation of the submission ; for the penalty of the
contract could only attach by the *defeat* of the in-
tended award.  The words of the contract are,  " So
that the above matters of arbitration are not brought
to a final end and determination" by a day specified ;
that is, so that no award should take place through
the laches of *Tousey.*  The term " *revocation*" is not
expressly used.  But the condition goes to all possi-
ble modes of preventing the award by *Tousey,* ex-
cepting by absence occasioned by death, sickness,
or inevitable accident, which are traversed.

Although the contract contemplates a meeting of
the arbitrators, and provides for the appointment of
others, in case they should decline the trust ; and al-
though it is conceded, that if no revocation had been
made, and the arbitrators had not met, or had de-
clined their appointment, and others had not been
appointed by the parties, there would have been no
breach in *Tousey,* yet when, by his revocation of the
submission, he absolutely prevented their meeting,
and devested them of all powers as arbitrators, he is

estopped from saying there is no breach; for the law will not suffer a person to take advantage of his own wrong. In the case of tender of money, where it is necessary to count it, yet if the payee absolutely refuses to receive it, he who tenders is excused from producing and counting the coin, and the payee is estopped from taking advantage of these defects in the tender, which would otherwise be fatal *by his own act.*

*Per Curiam.* The general principle is, that either of the parties to a submission to arbitrators by deed or bond, has a right (at any time before the award is made and published) to revoke, and if any injury is sustained by the opposite party, he must seek his remedy on the bond.

An attempt is made to take this case out of the general rule, by representing that the condition in the bond of submission, that in case *Tousey*, the defendant, should be absent, or neglect to attend before the arbitrators, so that the award could not be made by a certain day, inevitable accidents excepted, he should relinquish all claims, &c. against the plaintiff, as a contract independent of the bond of submission, and not annulled by the revocation of the submission. The Court consider, that this condition or provision is an inseparable part of the bond of submission, and must be operated upon by the revocation to the same extent as any other condition in the bond of submission. It is true it is inserted under the words commonly concluding a bond; but it is intimately connected with the subject matter of the bond by the expression, " and it is hereby further agreed." The breach of it has not subjected. as has been

urged, to an independent extrinsic penalty, but is otherwise expressly set forth, that in addition to subjecting himself to the above penalty, the said *Tousey* shall relinquish, &c.

But the Court will not enlarge upon these minutiæ, or certain other defects in the plea in bar; as the Court consider that it is beneficial to have it well understood that this case is decided upon a general principle. That in all cases where there is a submission of matters in controversy to arbitrators by deed or bond, whether the submission be made irrevocable or not; either party may revoke such submission before the award made and published, and by such revocation he annuls all contracts relative to the submission conditioned in the bond, and leaves the party injured by such revocation to rest solely for redress upon the penalty of the bond of submission.

Let judgment be entered, that the plaintiff's plea in bar to the defendant's declaration in set-off, is insufficient.

*Amos Marsh*, for the plaintiff.
*Samuel Miller* and *Josias Smith*, for the defendant.